Gerald BROWN and Judy Brown, husband and wife, Plaintiffs-Appellants,

v.

HANSEN PUBLICATIONS, INC., a corporation, Defendant-Appellee.

No. 74–2166.

United States Court of Appeals,
Ninth Circuit.

July 5, 1977.

Fred J. Pain, Jr., Pain & Julian, Tanner, Jarvis, Owens & Hoyt, Phoenix, Ariz., argued for plaintiffs-appellant.

Leo R. Beus, Jennings, Strouss & Salmon, Phoenix, Ariz., argued for defendant-appellee.

Before BROWNING and KENNEDY, Circuit Judges, and SWEIGERT,* District Judge.

PER CURIAM:

Appellants Gerald and Judy Brown brought this action against Hansen Publications, Inc., alleging violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a), in the distribution in the Phoenix area of popular (as distinguished from classical or educational) sheet music and music books. The district court entered judgment in favor of Hansen Publications. We affirm.

Hansen Publications, Inc., a Florida corporation wholly owned and controlled by Charles Hansen, is engaged in the publication of popular sheet music and music books. Music Retailers, Inc., and Pacific Coast Music Jobbers, Inc., California corporations wholly owned and controlled by Charles Hansen, are engaged in the distribution and sale of sheet music and music books.

Music Retailers operated concessions for the sale of sheet music and music books in branches of Wallich's a chain of California music stores. Wallich's opened a branch in Phoenix, Arizona, with Music Retailers operating the sheet music and music book concession. Music Retailers acquired similar concessions in two other Phoenix music stores, and negotiated unsuccessfully to acquire a concession in a fourth. During the time in question, Music Retailers controlled about 10 percent of the total retail business in popular sheet and book music in the Phoenix area with these concessions.

Appellants purchase sheet music and music books from Hansen Publications and other publishers and sell it at wholesale to retail outlets in Arizona. The concession arrangements between Music Retailers and the three music stores precluded appellants from selling music to these stores. Appellants' Sherman Act claims rested upon the fact that Music Retailers entered into the three concession arrangements and attempted to negotiate the fourth. Appellants' Robinson-Patman Act claim rested upon the contention that Hansen Publications made its sheet music and music books available to Music Retailers on more favorable terms than to appellants.

Appellants raise two narrow issues on appeal.

1. The district court rejected appellants' charge that Hansen Publications attempted to monopolize on the ground that appellants failed to establish the specific intent to monopolize essential to such a claim. *Lessig v. Tidewater Oil Co.*, 327 F.2d 459, 474–75 (9th Cir. 1964).[1] Appellants argue that intent to monopolize was established as a matter of law by the acquisition of the three exclusive concessions and the negotiations to acquire a fourth, because the admitted purpose of these acts was to increase Music Retailers' sales in the Arizona market by securing on an exclusive basis the business done through these outlets.

An exclusive concession is intended to and does exclude competing sellers from the particular outlet. But exclusive dealing arrangements are not per se illegal.[2] The

---

* Honorable William T. Sweigert, Senior United States District Judge, Northern District of California, sitting by designation.

1. *Mutual Fund Investors, Inc. v. Putnam Management Co.*, 553 F.2d 620, 627 (9th Cir. 1977); *Knutson v. The Daily Review, Inc.*, 548 F.2d 795, 813–14 (9th Cir. 1976); *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 512 F.2d 1264, 1276 (9th Cir. 1975); *Trixler Brokerage Co. v. Ralston Purina Co.*, 505 F.2d 1045, 1051–52 (9th Cir. 1974); *Chisholm Bros. Farm Equip. Co. v. International Harvester Co.*, 498 F.2d 1137, 1144–45 (9th Cir. 1974); *Hallmark Industry v. Reynolds Metals Co.*, 489 F.2d 8, 11–13 (9th Cir. 1973); *Moore v. Jas. H. Matthews & Co.*, 473 F.2d 328, 332 (9th Cir. 1973); *Industrial Building Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336, 1344 (9th Cir. 1970).

2. *See, e. g., Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327–29, 333–35, 81 S.Ct. 623, 5 L.Ed.2d 580 (1960); *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 512 F.2d 1264,

preemptive purpose present in such arrangements is not necessarily equivalent to the specific intent to exclude competition and fix prices that characterizes attempts to monopolize. Exclusive dealing contracts may be procompetitive in purpose. Appellee's witnesses avowed such a purpose and expressly denied any intent to exclude competitors or control prices in any part of commerce.

■ Appellants did not challenge the concession agreements under section 3 of the Clayton Act, 15 U.S.C. § 14. They have not taken issue with the district court's holdings that these agreements were not unreasonable restraints of trade violating section 1 of the Sherman Act and did not establish monopolization in violation of section 2. Appellants' only contention on appeal is that the record required a finding of specific intent to monopolize because of the preemptive purpose of the concession agreements. For the reasons stated, we cannot agree with that contention. A finding of intent to monopolize "was not compelled and we cannot say the district court's contrary determination was clearly erroneous." *Knutson v. The Daily Review, Inc.*, 548 F.2d 795, 815 (9th Cir. 1976).[3]

2. The district court rejected appellants' Robinson-Patman Act claim on the ground that Hansen Publications and Music Retailers were so closely related that the latter could not be considered a "purchaser" from the former for the purposes of the Robinson-Patman Act.[4]

■ As we have noted, both Hansen Publications and Music Retailers are solely owned by Charles Hansen. The two corporations have the same officers and the same directors. In their trial brief appellants concede that "[d]uring the times in question Hansen, Pacific Coast and Music Retailers utilized the same employees, the same office space, the same records, and their accounting and payroll [were] all handled by Hansen. In a prior action between these same litigants (Brown & Hansen) a finding of fact was entered that the operations of Hansen and Music Retailers were so intermingled that it was impossible to separate them and that they all were in reality the acts of Hansen."

The "sales" of sheet music and music books by Hansen Publications to Music Retailers resulted in bookkeeping adjustments in the Miami, Florida, office of the Hansen enterprise. Music "sold" to Music Retailers and not resold to consumers was simply returned to Hansen Publications. The facts relied upon by appellants as reflecting favored treatment of Music Retailers by Hansen Publications (that Hansen Publications did the accounting, paid the employees of Music Retailers, and took back the music sheets and books Music Retailers did not sell) were merely aspects of the integration of the two operations. The district court did not err in concluding that the activities of the Hansen enterprises involved in this litigation were in substance those of a single trader.

Appellants advance two primary arguments to the contrary. The first is based upon testimony that Music Retailers' local manager exercised considerable discretion in determining the prices at which Music Retailers resold sheet music and music books at wholesale to retail outlets. Appellants argue that control by one corporation

---

1275 (9th Cir. 1975); *Hoopes v. Union Oil Co.*, 374 F.2d 480, 486 (9th Cir. 1967).

**3.** Appellants suggest the trial judge "overlooked" the attempt by Music Retailers to negotiate an exclusive concession with a fourth retail outlet which, appellants say, controlled 40% of the market. This estimate of market share appears in the pretrial deposition of a witness and was substantially repudiated in his trial testimony. Another witness not only rejected the estimate, but also testified that one of the three retail outlets included in the 10%

share covered by consummated concession arrangements was larger than the fourth outlet that was the subject of the aborted negotiations. Moreover, since no agreement was reached, and the record does not disclose the terms Music Retailers attempted to obtain, the unsuccessful negotiation affords little basis for an inference of monopolistic intent.

**4.** The court relied upon *Reines Distrib., Inc. v. Admiral Corp.*, 256 F.Supp. 581 (S.D.N.Y.1966), and *Baim & Blank, Inc. v. Philco Corp.*, 148 F.Supp. 541 (E.D.N.Y.1957).

of another corporation's pricing policies and practices is the principal factor determining whether the corporations are to be treated as separate entities for purposes of the Robinson-Patman Act. This may be true when the question is whether related corporations selling in the same market are to be treated as a single trader for the purpose of comparing their respective selling prices under Robinson-Patman Act strictures. *See, e. g., Baim & Blank, Inc. v. Philco Corp.,* 148 F.Supp. 541, 544 (E.D.N.Y.1957). But that is not the question here.

The present case involves the circumstances under which music is transferred to Music Retailers and not the events surrounding Music Retailers' sales to its customers. The record reveals that Hansen Publications and Music Retailers are parts of a single integrated enterprise and that transfers between them were indistinguishable from dealings within the same corporate entity. Competition was not impaired by the fact that accounting and payroll records for the Charles Hansen enterprises were handled centrally, nor by unrestricted music returns within the integrated operation. The transfer of Hansen music to Music Retailers therefore did not make the latter a "purchaser" for purposes of the statute.

Appellants' second argument seems to be that the two corporations must be treated as distinct for purposes of the Robinson-Patman Act because Hansen Publications is barred by the copyright laws (for reasons not fully explained in the record) from selling music of the highly successful group "The Beatles," and Music Retailers was organized as a separate corporate entity to avoid this bar. Whatever may be the case as to the copyright laws, nothing in the record suggests that disregarding the separate corporate entities will enable Charles Hansen to circumvent the purposes of the Robinson-Patman Act. There is therefore no reason for treating Music Retailers as a separate entity on this basis alone.

Affirmed.