**Charles Emmet PARRISH,
Plaintiff-Appellant,**

**v.**

**Edward COX, Individually, and d/b/a Cox Oil Company, Inc., and Cox Oil Company, Inc., Defendants-Appellees.**

**No. 77–1033.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 2, 1978.

Decided Nov. 13, 1978.

James F. Schaeffer, James L. Kacena, Memphis, Tenn., for plaintiff-appellant.

Henry H. Hancock, Farris, Hancock, Gilman, Branan & Lanier, Memphis, Tenn., for defendants-appellees.

Before PHILLIPS, Chief Judge, WEICK, Circuit Judge, and LAWRENCE, Senior District Judge.*

LAWRENCE, Senior District Judge.

This is an appeal by a filling station operator (Parrish) from a judgment of the District Court dismissing his action against a wholesale gasoline distributor (Cox) in which he alleged violations of the price discrimination provisions of the Robinson-Patman Act.[1]

---

* The Honorable Alexander A. Lawrence, Senior Judge, United States District Court for the Southern District of Georgia, sitting by designation.

1. "It shall be unlawful for any person engaged in commerce . . . to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce . . . and where the effect of such discrimination may be substantially to lessen competition . . . or to injure, destroy, or prevent competition with any person who either grants or knowingly receives

We affirm on the basis that the findings and conclusions of the District Judge are not clearly erroneous and cannot be set aside on appeal under F.R.Civ.P. 52(a). Because no prior decision of this Court has considered a similar factual situation or the same legal issues, we add some comments and observations concerning the case.

Plaintiff did not demand a jury trial. The case was tried before the Honorable Bailey Brown, Chief Judge of the Western District of Tennessee. At the pre-trial conference, he limited the hearing initially to plaintiff's proof establishing a case of prima facie liability under the Act. If such liability were established, a subsequent hearing would be necessary at which the defendant would go forward with its evidence.[2]

In conspectus, the factual background of the case is as follows. Cox Oil Company was organized as a corporation in 1970. It was formed in order to become a distributor of Fina brand gasoline under a contract with American Petrofina Petroleum Company. Cox distributed gasoline to six Fina stations in Memphis. Among them was the Danny Thomas Boulevard Fina station which Parrish operated under an oral agreement. Plaintiff paid no rent. He obtained gasoline on consignment from Cox and paid for same periodically based on the number of gallons sold. The same agreement existed with the other Fina stations supplied by Cox. All of the retail operators were, at that time, independent dealers.

In September, 1973, the oral agreements, including that of Parrish, were reduced to writing. A lease agreement was executed on a thirty day basis with automatic renewal in the absence of ten days notice of termination by either party. A "Gasoline Consignment Agreement" was simultaneously executed. Under it, the consignee agreed to receive, store, handle, and sell gasoline or motor fuels delivered under the consignor's brand. Parrish was to pay all expenses of his business, including maintenance of facilities, taxes, and personnel. The method of payment provided in the Consignment Agreement committed the independent dealers to purchasing gasoline only from Cox.

The Arab oil embargo and the resultant gasoline shortage in this country during the fall of 1973 and the winter and early spring of 1974 produced dramatic increases in the price of gasoline. Retailers sold all of the supply they could obtain at the allowable maximum profit of eight cents per gallon. American Petrofina produced oil only domestically and had to import much from foreign sources. Its price to jobbers such as Cox remained higher after the emergency ended than prices prevailing generally in the gasoline market.

During this period, Cox found it difficult to keep and replace dealer-operators of its six stations. Two were abandoned by dealers in 1974. Two more were abandoned in 1975. In each instance, the four became company-managed stations. They are managed by salaried employees of Cox; they do not maintain independent books or accounts; there are no bookkeeping entries showing a sale or transfer of gasoline to the company-managed stations.

Parrish continued to do business as an independent dealer, maintaining high profit margins and concentrating on sales to trucks, some of which were operated by his in-laws. They parked their trucks there, piled used tires on the property, and used the facility as business offices. Cox threatened to cancel the lease unless the trucks and truckers were removed. Parrish promised to clean up the station.

Meanwhile, Parrish brought the present suit. In the complaint and in his testimony, he claims violations of the Robinson-Patman Act by defendant (a) in selling gasoline

the benefit of such discrimination, or with customers of either of them." 15 U.S.C. § 13(a).

2. The Robinson-Patman Act provides that "Upon proof being made, . . . that there has been discrimination in price . . . the burden of rebutting the prima-facie case thus made by showing justification shall be upon the person charged with a violation of this section . . . ." 15 U.S.C. § 13(b). See *Ludwig v. American Greetings Corporation,* 264 F.2d 286 (6th Cir. 1959).

and other products to the company-managed stations cheaper than to plaintiff; (b) in economically coercing retail dealers so as to run them out of business and take over the retail service operations of Fina in Memphis; and (c) in discriminatorily selling to the company-managed outlets at the price defendant pays for the same products on a wholesale basis. Plaintiff charges, in short, that upon assuming the ownership and operation of retail service stations which were in competition with Parrish, Cox sold gasoline to the company-managed stations at a price considerably less than it charged him.[3]

Such, in brief compass, was the evidence before the trial judge which, although in dispute, was within the range of his fact-finding authority.

The issue on appeal, as framed by the appellees in their brief, is that no prima facie case of liability was established by Parrish in that there was a failure of proof under 15 U.S.C. § 13(a) which requires that there be two or more sales by the same seller and that these sales tend substantially to lessen competition.[4]

Following a two day evidentiary hearing, Chief Judge Brown handed down a "Memorandum Decision." He found that plaintiff had failed to establish prima facie liability under Robinson-Patman because (1) there was no lessening of competition since Parrish and the company-managed stations did not compete in the same relevant market area and (2) Parrish had not proven that there were two or more consummated sales of gasoline by the same seller.

The District Court stated that competition with the party favored by the price discrimination was necessary and that both parties must operate on the same functional level of competition within the same commercial market.[5] It found that, according to Parrish's own testimony, his competitors were located in the same area of Memphis. None of those stations sold Fina gasoline. Parrish's former customers testified that when they quit doing business with him they went to other stations in the area, not to other Fina stations.

Judge Brown indicated that the determination of the relevant market area issue disposed of the case. He went on, however, to decide whether or not two sales were made at different prices: one between plaintiff and defendants; the other between defendants and its own retail outlets. In other words, within the meaning of the Act, did Cox sell gasoline to the company-managed stations?

Parrish contends that a sale between a parent corporation and a wholly-owned subsidiary may constitute a sale within the meaning of the Act. He cites *Perkins v. Standard Oil Company of California*, 395 U.S. 642, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969); *Mississippi Petroleum, Inc. v. Vermont Gas Systems, Inc.*, 1972 Trade Cases § 73,843 (S.D.Miss.1972); and *Danko v. Shell Oil Company*, 115 F.Supp. 886 (E.D.N.Y.1953).[6]

---

3. Specifically, Parrish contends that the company-managed stations were selling gasoline at retail for the same price that he had to pay defendant for his gasoline and that, for him to make any profit, his retail price was four or five cents above that charged by the company-managed stations.

4. The District Court did not find it necessary to deal with the other requirements of establishing a prima facie case under the Act, i. e., that fungible goods be sold at different prices and that the goods be in commerce.

5. "[T]he requisite adverse competitive effects on the customer level cannot be established unless the various customers actually compete with each other, geographically as well as functionally." 4 Von Kalinowski, *Antitrust Laws*

and *Trade Regulation*, § 30.02[3]. See generally *American Oil Company v. Federal Trade Commission*, 325 F.2d 101 (7th Cir. 1963) cert. denied 377 U.S. 954, 84 S.Ct. 1631, 12 L.Ed.2d 498 (1964).

6. The *Danko* decision was discussed in 1976 in another decision by a New York District Court. See *Diehl & Sons, Inc. v. International Harvester Company*, 426 F.Supp. 110, 123 n. 20 (E.D.N.Y.1976). There, the court pointed out that *Danko* relied on *Timken Roller Bearing Co. v. United States*, 341 U.S. 593, 598, 71 S.Ct. 971, 95 L.Ed. 1199 (1951) which involved a conspiracy between partially-owned subsidiaries and their "parent" whereas in *Diehl* the branches of International Harvester were merely divisions of one legal entity. The District Court referred

The District Court stated that even if the company-managed stations were deemed subsidiaries of defendant, they must be operated independently of dominion and control of defendant in order for there to be a sale between them. See *Brewer v. Uniroyal, Inc., supra,* 498 F.2d at 977 n.2. (6th Cir. 1974); *Reines Distributors, Inc. v. Admiral Corporation,* 256 F.Supp. 581 (S.D.N.Y. 1966); 3 Von Kalinowski, *Antitrust and Trade Regulation,* § 24.04[2]. The District Court correctly ruled that Cox exercised such control over the company-managed stations that there could be no sales between them within the meaning of the Act.[7]

Parrish also contends that the consignment agreement was a sham and that Cox actually sold gasoline to him.[8] He relies on *Simpson v. Union Oil Co. of California,* 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964) and *Standard Fashion Company v. Magrane-Houston Company,* 258 U.S. 346, 42 S.Ct. 360, 66 L.Ed. 653 (1922). In *Simpson,* the Supreme Court held that "a consignment is not allowed to be used as a cloak to avoid § 3 of the Clayton Act." 377 U.S. at 18, 84 S.Ct. at 1055.

We agree that substance, not form, controls and that, in a proper case, the consignment device cannot hide the true nature of the transaction as a sale or determine who the competitors actually are. However, the District Court in this case found against the plaintiff as to his contentions in that respect. It indicated that control by Cox over Parrish's station was for maintaining quality rather than for avoiding the antitrust laws. See *Pogue v. International Industries, Inc.,* 524 F.2d 342 (6th Cir. 1975).

The findings and conclusions of the District Court are supported by the evidence. They are not clearly erroneous; in fact, they are clearly not erroneous.

The judgment appealed from is affirmed.

---

to the Sixth Circuit decision in *Brewer v. Uniroyal, Inc.,* 498 F.2d 973 (6th Cir. 1974) where there was no appeal from the trial court's ruling that "since Uniroyal controlled the day-to-day operation of the outlet, no Robinson-Patman liability could be found based on intra-company sales."

7. Chief Judge Brown found that "the Cox Oil Co. maintains daily supervision of all the Company operated stations. The business records of the Company operated stations were maintained by and in control of Cox Oil Co. The employees who run the various stations were on the Cox Oil Co. payroll. The management decisions concerning the stations such as the retail prices are made by Cox Oil Co. employees."

8. Two or more sales to different purchasers are required under the Act. Since we have already held that there were no sales to the company-managed stations, Parrish would be in no better position if we ruled that the "consignment" was, in fact, a sale.