EMIL J. LAUTER CO., INC., etc., Plaintiff,

v.

BRUNSWICK CORPORATION, Defendant.

No. 81 C 4562.

United States District Court, N. D. Illinois, E. D.

Feb. 26, 1982.

Jerome Feldman, Chicago, Ill., for plaintiff.

Richard J. Klein, Mayer, Brown & Platt, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Emil J. Lauter Co., Inc. ("Lauter") sues Brunswick Corporation ("Brunswick") charging price discrimination in violation of Section 2(a) of the Robinson-Patman Act (the "Act"), 15 U.S.C. § 13(a). Brunswick has moved to dismiss under Fed.R.Civ.P. ("Rule") 12(b)(6). For the reasons stated in this memorandum opinion and order Brunswick's motion is granted.

### Facts [1]

Lauter's Skokie, Illinois store sells billiard tables and pinball machines at retail. On May 28, 1974 Lauter entered into a non-exclusive dealership agreement (the "Agreement") to sell Brunswick billiard tables. Brunswick later established its own competitive retail outlets [2] for billiard tables and pinball machines. Brunswick supplied its own retail outlets with merchandise at prices lower than those charged Lauter, in an attempt to drive Lauter out of business.[3] Lauter sustained injury to his business and seeks treble damages because of Brunswick's conduct.[4]

### Robinson-Patman Act Liability

Section 2(a) provides:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality ... where such commodities are sold for use, consumption, or resale....

At least two sales by a defendant are essential to a cause of action under the Act: one to plaintiff and one to plaintiff's competitor. *Lupia v. Stella D'Oro Biscuit Co.*, 586 F.2d 1163, 1170–71 (7th Cir. 1978).

It appears that Brunswick's "outlets" are not separate corporate entities.[5] If so the case is over. By definition Bruns-

---

1. As in every Rule 12(b)(6) motion, the "facts" are drawn from the Complaint. No findings are implied by the recital of Lauter's allegations.

2. There is internal inconsistency within the Complaint as to how many outlets Brunswick established. Paragraph 6 speaks of one "outlet" while Paragraphs 8 and 10 use the plural "outlets." Given the holding of this opinion that discrepancy is irrelevant.

3. Rule 12(b)(6) motions are not of course the proper vehicle for addressing a plaintiff's likelihood of proving a complaint's allegations. This Court however notes that Agreement ¶ 15 provides in part:

    Either party may terminate this Agreement without cause by giving the other party sixty (60) days' prior written notice of termination.
    With Brunswick having that absolute right to rid itself of Lauter, it seems absurd to charge it with plotting means "to drive [Lauter] out of business" (Complaint ¶ 8).

4. Lauter also charges Brunswick with:
    (1) failing to ship Lauter's orders on time;
    (2) failing to ship merchandise ordered by Lauter;
    (3) selling products through its own outlets that were not offered to Lauter;
    (4) "unilaterally" terminating Lauter's dealership, alleging Lauter's sales decline was due to lack of interest in the Brunswick franchise.

    None of those acts is cognizable under Act § 2(a), which treats only with discriminatory pricing. It is therefore unnecessary to treat with other defects those allegations may pose (including in part the point made in n.3).

5. Throughout the Complaint the locution suggests that situation: Paragraph 6 says *Brunswick* "own[s] and operate[s] its own retail outlet ... in direct competition with [Lauter]." Paragraph 7 refers to Lauter as Brunswick's competitor and to "competition between [Lauter] and [Brunswick]...." Paragraph 8 speaks of Brunswick as having "*supplied* [merchandise] at its retail outlets for prices lower than it *sold* said products to [Lauter]" (emphasis added). Paragraph 10 refers to *Brunswick* as having "sold products at its own outlets...." Brunswick's memorandum similarly refers to "a transfer by one corporate division to another corporate division...."

wick could not sell to itself, whether or not (for example) it may have maintained divisional accounting or comparable records for its own convenience. No second "purchaser" would exist—fatal to a Section 2(a) claim.[6] *Diehl & Sons, Inc. v. International Harvester Co.*, 426 F.Supp. 110, 123 (E.D.N.Y.1976). As our own Court of Appeals put it in *Lupia*, 586 F.2d at 1171:

> In addition, Judge Flaum thought it inherently impossible for illegal competition to exist where a manufacturer competes directly with his own distributor. That is his privilege, according to *Chicago Sugar Co. v. American Sugar Refining Co.*, [176 F.2d 1, 10 (7th Cir. 1949)].

But because Lauter may have been guilty of faulty factual pleading as well as faulty legal analysis (in which case the factual flaw might be deemed cured by repleading), this opinion will examine the alternative—that Brunswick's "outlets" are operated by corporate subsidiaries. Lauter could fare no better under that hypothesis, under such cases as *Security Tire & Rubber Co. v. Gates Rubber Co.*, 598 F.2d 962, 964–67 (5th Cir.), *cert. denied*, 444 U.S. 942, 100 S.Ct. 298, 62 L.Ed.2d 309 (1979); *see*, P. Areeda, Antitrust Analysis ¶ 701(c), at 1056 and n.18.

True enough, some courts have (incorrectly in this Court's view) analyzed like problems in a way that could permit form to prevail over economic substance, finding possible a "sale" between parent and subsidiary for Robinson-Patman purposes. But that notion, even where recognized, has been strictly limited to the subsidiary "operated independently of dominion and control of [the parent]...." *Parrish v. Cox*, 586 F.2d 9, 12 (6th Cir. 1978).[7] Here Complaint ¶ 6 says Brunswick "operate[s]" the outlets, negating any such independence.

*Conclusion*

Whatever view of the relationships and the legal alternatives is adopted, Lauter has no viable Section 2(a) claim against Brunswick. Accordingly Brunswick's Rule 12(b)(6) motion is granted and the Complaint is dismissed.

---

6. Brunswick also says Lauter has failed to assert the sale of a product in interstate commerce as required by the Act. While the Complaint lacks such an allegation, Lauter's memorandum states the billiard tables are manufactured in and shipped from Virginia. Because an amended pleading could thus cure the defect, this opinion deals only with the "two sale" issue.

7. Indeed *Parrish* itself demonstrates the inherent fallacy in undertaking such an excursion. It does not appear from the Court's discussion (*id.* at 10–11) that when the gasoline distributor took over abandoned stations of its former dealer-operators any of its separate corporate entities were involved. But whether or not that was the case, the felt need to proceed to a discussion of "control" evokes an economist's despair (albeit some lawyers' delight).