Joseph J. SHAVRNOCH,
Plaintiff-Appellant,

v.

CLARK OIL AND REFINING CORPO-
RATION, a Wisconsin corporation,
Defendant-Appellee.

No. 82–1962.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 9, 1983.

Decided Feb. 1, 1984.

Bruce A. Newman, argued, Richard J. Drew, Flint, Mich., for plaintiff-appellant.

Miller, Canfield, Paddock & Stone, Larry J. Saylor, Michael P. Coakley, Gregory L. Curtner, argued, Detroit, Mich., for defendant-appellee.

Before ENGEL and CONTIE, Circuit Judges, and GIBSON, Senior Circuit Judge.*

CONTIE, Circuit Judge.

Plaintiff Joseph J. Shavrnoch appeals from a summary judgment dismissing his claim that defendant Clark Oil & Refining Corp. (Clark) engaged in price discrimination in violation of § 2(a) of the Clayton Act, as amended by the Robinson-Patman Antidiscrimination Act, 15 U.S.C. § 13(a), and unlawful monopolization in violation of § 2 of the Sherman Antitrust Act, 15 U.S.C. § 2. We affirm the summary judgment on plaintiff's unlawful monopolization claim and plaintiff's first price discrimination claim. We also remand this case to the district court for consideration of plaintiff's second price discrimination claim.

I.

The plaintiff was the lessee and operator of a Clark service station in Fenton, Michigan from 1968 until July 1982. The plaintiff stated in a deposition that his service station was one of twelve stations in Fenton and that the Fenton market was extremely competitive. The defendant, Clark Oil, is a Wisconsin corporation that refines and markets petroleum products. The record indicates that Clark owns and operates 203 service stations in Michigan and 1,114 stations nationwide. As of 1981, Clark had a 5.9% share of the Michigan gasoline market and a 1.06% share of the national gasoline market.

The defendant markets its gasoline in three ways. First, it sells gasoline directly through Clark stations operated by Clark employees. Second, it sells gasoline to branded independent dealers, such as plaintiff, who lease their stations from Clark. These dealers have the option of purchasing gasoline on either a consignment or a tankwagon basis.[1] Finally, Clark sells a small amount of gasoline to wholesalers and unbranded retailers at the refiner's loading rack. These dealers supply their own transportation and do not utilize Clark's advertising or administrative services.

In August 1980, the plaintiff brought this antitrust action in which he alleged that Clark was driving branded independent dealers out of business in order to increase

---

* The Honorable Floyd R. Gibson, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. A dealer working on a consignment basis pays Clark only for the gasoline that is sold at the pumps. A dealer working on a tankwagon basis must pay for the entire shipment of gasoline upon delivery. The plaintiff worked on a tankwagon basis and paid for his shipments of gasoline within approximately 24 hours after delivery.

the number of company-operated stations. To achieve this result, the plaintiff contended, Clark engaged in illegal price discrimination by charging branded independent dealers more for gasoline than it charged (1) company-operated stations and (2) wholesalers and unbranded retailers. The plaintiff also alleged that Clark violated § 2 of the Sherman Act by limiting the supply of gasoline to its branded independent dealers.

In September 1982, Clark filed a motion for summary judgment along with a supporting brief and the affidavit of Harold J. Lessner, Assistant Secretary of Clark Oil. In his affidavit, Lessner states that the company-operated stations are operated under the complete control and supervision of Clark. As a result, Lessner indicates that Clark supplies gasoline to these stations by "internal transfer" and not by sale. Lessner also states that Clark sells a small amount of gasoline to wholesalers and unbranded retailers at a reduced or "rack" price. Lessner justifies the lower price by explaining that these buyers transport the gasoline themselves and do not utilize Clark's administrative services. The record indicates that the plaintiff filed a response brief with no affidavits or other documentary evidence.

In a memorandum opinion dated October 22, 1982, the district court granted defendant's motion for summary judgment. The court found that Clark was entitled to summary judgment on plaintiff's first price discrimination claim because Clark had not made sales to two different "purchasers" by supplying gasoline to branded independent dealers and company-operated stations. 15 U.S.C. § 13(a). The court explained that the relationship between Clark and its company-operated stations could not be characterized as a seller-purchaser relationship. The court did not, however, address plaintiff's second price discrimination claim that Clark charged branded independent dealers more for gasoline than it charged wholesalers and unbranded retailers. As to plaintiff's monopolization claim, the court determined that the defendant did not have sufficient monopoly power to restrain competi-

tion based upon its 5.9% share of the Michigan gasoline market. Plaintiff appeals.

## II.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Although the Supreme Court and this circuit have repeatedly indicated that summary judgment should be used sparingly in complex antitrust litigation, see *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Bouldis v. U.S. Suzuki Motor Corp.,* 711 F.2d 1319, 1324 (6th Cir.1983); *Smith v. Northern Michigan Hospitals, Inc.,* 703 F.2d 942, 947 (6th Cir.1983), both courts have also emphasized that Rule 56 makes absolutely no distinction between antitrust and other cases. See *First National Bank of Arizona v. Cities Services Co.,* 391 U.S. 253, 288–90, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968); *Bouldis v. U.S. Suzuki Motor Corp.,* 711 F.2d at 1324; *Daily Press, Inc. v. United Press International,* 412 F.2d 126, 128 (6th Cir.), *cert. denied,* 396 U.S. 990, 90 S.Ct. 480, 24 L.Ed.2d 453 (1969). Accordingly, an antitrust litigant who opposes a properly supported summary judgment motion by merely resting on his pleadings will expose his claims to summary judgment disposition. *Fed.R.Civ.P.* 56(e); *First National Bank of Arizona v. Cities Services Co.,* 391 U.S. at 289, 88 S.Ct. at 1592. "Once the defendant has adequately rebutted the plaintiff's allegations by establishing legitimate alternative explanations for its conduct which disprove the inferences that plaintiffs seek to draw, then the plaintiffs must come forward with some significant probative evidence tending to support the complaint." *Smith v. Northern Michigan Hospitals, Inc.,* 703 F.2d at 948.

## III.

■ As a threshold matter, the plaintiff objects to the district court's "precipitous" entry of judgment prior to completion of plaintiff's discovery. The discovery materials which the plaintiff sought but did not receive were: (1) a price list showing the tankwagon price charged by Clark to Shavrnoch since 1976, and (2) other financial documents relating to Clark's company-operated stations. We note, however, that the plaintiff does not allege that these documents contain information that would have created a genuine issue of material fact. *Cf. Daily Press, Inc. v. United Press International,* 412 F.2d at 135 (entry of summary judgment proper where additional discovery would not have affected disposition of case). Moreover, the plaintiff never filed an affidavit with the district court to stay consideration of the summary judgment motion pursuant to *Fed.R.Civ.P.* 56(f).[2] In the absence of such an affidavit, the district court had no reason to delay entry of judgment based upon the evidence before it. *See Over the Road Drivers, Inc. v. Transport Insurance Co.,* 637 F.2d 816, 821 (1st Cir.1980); *Thi-Hawaii, Inc. v. First Commerce Financial Corp.,* 627 F.2d 991, 994 (9th Cir.1980); *British Airways Board v. Boeing Co.,* 585 F.2d 946, 954–55 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). *See also Adickes v. Kress & Co.,* 398 U.S. 144, 160–61, 90 S.Ct. 1598, 1609–10, 26 L.Ed.2d 142 (1970). Accordingly, we hold that the district court did not abuse its discretion by granting the defendant's summary judgment motion prior to the completion of plaintiff's discovery.

## IV.

The plaintiff contends that Clark Oil engaged in unlawful monopolization by limiting the supply of gasoline to branded independent dealers in order to drive them out of business. We disagree.

■ The offense of unlawful monopolization under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. *United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966); *D.E. Rogers Associates, Inc. v. Gardner-Denver Co.,* 718 F.2d 1431, 1438 (6th Cir.1983). Monopoly power is defined as "the power to control prices or exclude competition." *United States v. E.I. duPont de Nemours & Co.,* 351 U.S. 377, 391, 76 S.Ct. 994, 1004, 100 L.Ed. 1264 (1956); *Continental Cablevision of Ohio, Inc. v. American Electric Power Co.,* 715 F.2d 1115, 1120 (6th Cir.1983). The existence of monopoly power may be inferred from the predominant share of the relevant market. *United States v. Grinnell Corp.,* 384 U.S. at 571, 86 S.Ct. at 1704.

■ The district court held, and the parties do not contest, that the relevant market is the gasoline market in Michigan. In this context, the defendant offered uncontroverted evidence that Clark held a 5.9% share of the Michigan gasoline market in 1981. While the relative effect of a business' percentage share of the relevant market varies with the setting in which that factor is placed, *United States v. Columbia Steel Co.,* 334 U.S. 495, 528, 68 S.Ct. 1107, 1124, 92 L.Ed. 1533 (1948), we are convinced that the defendant simply does not possess sufficient market power to control prices or exclude competition. *Compare United States v. Grinnell Corp.,* 384 U.S. at 571, 86 S.Ct. at 1704 (87% share of accredited central station service business sufficient to create monopoly) *and International Boxing*

---

**2.** Fed.R.Civ.P. 56(f) reads as follows:

(f) When affidavits are unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

*Club of New York, Inc. v. United States,* 358 U.S. 242, 249, 79 S.Ct. 245, 249, 3 L.Ed.2d 270 (1959) (control of 81% of all championship boxing matches sufficient to create monopoly) *with United States v. E.I. duPont de Nemours & Co.,* 351 U.S. at 399–401, 76 S.Ct. at 1009–1010 (17.9% share of flexible packaging materials market not sufficient to create monopoly) *and United States v. United States Steel Corp.,* 251 U.S. 417, 444–45, 40 S.Ct. 293, 296–97, 64 L.Ed. 343 (1920) (50.1% share of finished iron and steel products market insufficient to create monopoly). Since the defendant does not possess monopoly power, plaintiff's monopolization claim must fail.

## V.

The plaintiff also contends that the defendant violated § 2(a) of the Clayton Act by discriminating in price between branded independent dealers and defendant's company-operated stations.

Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Antidiscrimination Act, 15 U.S.C. § 13(a), provides in pertinent part:

(a) It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers or commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, . . . and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

■ As a basic pre-condition for a violation of the statute, the plaintiff must establish that the defendant made a sale to each of two separate and distinct purchasers. *Security Tire & Rubber Co. v. Gates Rubber Co.,* 598 F.2d 962, 964 (5th Cir.), *cert. denied,* 444 U.S. 942, 100 S.Ct. 298, 62 L.Ed.2d 309 (1979). The issue, therefore, is whether the intra-corporate transfer of gasoline between Clark and its company-operated stations constitutes a sale within the meaning of the statute.

In *Parrish v. Cox,* 586 F.2d 9 (6th Cir. 1978), this court addressed this precise question. Cox Oil Company supplied gasoline to six gas stations which were operated by independent dealers. During the Arab oil embargo, Cox began operating four of the stations after the independent operators abandoned them. Thereafter, one of the remaining independent dealers, Parrish, brought a Robinson-Patman claim against Cox after discovering that Cox supplied gasoline to its company-operated stations at a lower price than it charged the independent dealers. This court, however, affirmed the district court's ruling that Cox exercised such control over its stations that there could be no sales between them within the meaning of the statute. *Id.* at 12. The elements of control cited by the district court were Cox's daily supervision of its stations, its maintenance of the stations' business records, its maintenance of the stations' employees on its payroll, and its complete decisionmaking authority over the setting of retail prices. *Id.* at 12 n. 7.

■ We hold that *Parrish* should be followed in this case. Clark presented uncontroverted evidence that it maintained complete dominion and control over its company-operated stations. All of the employees who work at these stations are Clark employees. Clark determines the amount of gasoline sent to these stations and sets the retail prices. Clark also maintains the business records of the company-operated stations and maintains complete supervisory authority over the stations. Under these circumstances, we hold that the intra-corporate transfers of gasoline from Clark to its company-operated stations are not sales within the meaning of the statute. *See also Security Tire & Rubber Co. v. Gates Rubber Co.,* 598 F.2d at 964–67; *Brown v. Hansen Publications, Inc.,* 556 F.2d 969, 971–72 (9th Cir.1977); *Emil J. Lauter Co., Inc. v. Brunswick Corp.,* 532 F.Supp. 983, 984–85 (N.D. Ill.1982); *Island Tobacco Co. v. R.J. Reyn-*

*olds Industries, Inc.,* 513 F.Supp. 726, 733–34 (D.Hawaii 1981). Since no second "purchaser" exists, plaintiff's first price discrimination claim must also fail.

Although the district court properly dismissed plaintiff's first price discrimination claim, it failed to address plaintiff's second price discrimination claim that Clark charged branded independent dealers more for gasoline than it charged wholesalers and unbranded retailers. We note that this claim identifies two sales by the same seller to two distinct purchasers as required by 15 U.S.C. § 13(a). We therefore remand this case to the district court with instructions to address this claim. We express no view on the merits of this issue. Accordingly, the judgment of the district court is AFFIRMED in part and REMANDED to the district court for further proceedings in accordance with this opinion.