884 F.2d 580
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Woodrow SCHONTER, Donald C. Toda, Plaintiff-Appellant,
v.
PLATING CO. OF AMERICA, LOCAL 20 TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN & HELPERS, Defendant-Appellee.
 No. 88-3836.
 United States Court of Appeals, Sixth Circuit.
 Sept. 6, 1989.
 
 Before WELLFORD and DAVID A. NELSON, Circuit Judges, and ANNA DIGGS TAYLOR*, District Judge.
 PER CURIAM:
 
 
 1
 This is a Sec. 301 case in which appellants contend that the appellee, Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 20 (the Union), violated its duty of fair representation when it handled appellants' grievance against the employer, Plating Company of America (Plating).[1] The district court granted summary judgment in favor of the Union. We affirm.
 
 
 2
 The Union and Plating entered into a collective bargaining agreement (CBA) effective from September 4, 1979 to September 4, 1982. The CBA recognized the Union as the exclusive bargaining representative for all employees performing work subject to the agreement. Appellant Woodrow Schonter was hired by Plating's predecessor on October 3, 1955, and he was a union steward from September 4, 1964 to the time he was discharged.
 
 
 3
 On February 8, 1982, Schonter received a notice from Sam Criscio, Plating's owner, advising him that he would be laid off effective February 11, 1982. Upon receiving the layoff notice, Schonter went to union business agent Robert Robaszkiewicz's office and asked for a withdrawal card. At that time, Schonter advised Robaszkiewicz that he was being laid off. The agent asked Schonter why he was being laid off, to which Schonter responded that he was laid off because of lack of work. Robaszkiewicz then advised Schonter that he would investigate the circumstances of his layoff.
 
 
 4
 After Schonter and Robaszkiewicz had their conversation, Robaszkiewicz proceeded to investigate Schonter's layoff. Robaszkiewicz contacted employees of firms that had done business with Plating in the past in order to determine whether those firms were still conducting business with Plating, which was a small business with relatively few employees. Robaszkiewicz learned that these firms were still doing business with Plating, and thereafter met with Criscio who, advised him that Plating was going out of business. Robaszkiewicz then sent Plating a letter on March 10, 1982, requesting that the Plating negotiate with the Union regarding the closing.
 
 
 5
 Shortly thereafter, Schonter received a check from Plating for $382.77. Schonter then called Robaszkiewicz and asked him why he received the check. The latter advised him that he did not know, but that Schonter should bring the check to his office. The next day, Schonter met with Robaszkiewicz who stated that he would go to Plating and investigate.
 
 
 6
 About a week later, Robaszkiewicz made another visit to Plating. This time, Robaszkiewicz observed three employees working, and he informed Schonter that he would assist in preparing a grievance. On that same day, Robaszkiewicz also assisted the other appellant, Donald Toda, in preparing a grievance.[2] Schonter left a copy of the grievance with Robaszkiewicz and personally delivered another copy to Plating.
 
 
 7
 On March 30, 1982, Robaszkiewicz, accompanied by union business agent, Harley Laws, visited Plating once again, and they attempted to discuss the grievance with Criscio. When Robaszkiewicz questioned Criscio regarding who was working for Plating, however, Criscio told them that the Union no longer represented the employees and abruptly refused to discuss the matter further.
 
 
 8
 Several weeks later, Robaszkiewicz wrote a letter to Plating's attorney, requesting a meeting between the Union and Plating as soon as possible. Plating did not respond. On June 8, 1982, Union secretary-treasurer, Daniel J. Farbrother, sent a letter to Plating's attorney demanding that Plating meet with the Union in order to discuss Plating's closing and Schonter's grievance. Plating again failed to respond. On June 18, 1982, the Union filed an unfair labor practice charge against Plating with of the National Labor Relations Board (NLRB).
 
 
 9
 On June 25, 1982, Criscio sent a letter to Farbrother advising the Union that Plating had sold its equipment to P & J Industries and that P & J now held the lease on the building formerly occupied by Plating. A few days afterward, Farbrother received a letter from the company attorney requesting a meeting to discuss the pending grievances.
 
 
 10
 At the subsequent meeting, the Union and Plating were unable to resolve the grievances, but Plating offered Schonter $500 in settlement of his grievance and similarly offered Toda $100. Both plaintiffs rejected Plating's offers.
 
 
 11
 On July 7, 1982, Robaszkiewicz prepared another grievance against Plating, alleging that Plating's business had been sold or leased without affording protection to the bargaining unit as required by the CBA. In a letter accompanying the grievance, Robaszkiewicz advised Plating that the union intended to arbitrate the previously filed grievances and further requested a meeting with Plating to discuss the newly filed grievance. Plating responded by restating its position that Plating had not been sold, but its equipment had been sold and the premises leased.
 
 
 12
 On July 16, 1982, Farbrother, in investigating the July 7, 1982 grievance, sent Plating a detailed questionnaire concerning the discontinuance of Plating's operations and its relationship with P & J. Robaszkiewicz proceeded to request a panel of arbitrators from the Toledo Labor-Management Citizens Committee. Within ten days, the Union's attorney advised Plating's attorney of receipt of a proposed panel of arbitrators had been received.
 
 
 13
 Plating responded to Farbrother, answering each and every one of Farbrother's questions relating to the sale and lease. Plating advised the Union that there was no relationship between Plating and P & J Industries, that P & J had assumed the building lease, and that P & J occupied the building on March 15, 1982. In response, the NLRB advised the union that it would not pursue further proceedings against Plating pursuant to the unfair labor practice charge. Robaszkiewicz sent Schonter a copy of the NLRB decision.
 
 
 14
 On September 14, 1982, the Union and Plating met once again to discuss the various pending grievances. At this meeting, Plating continued to argue that there had been no sale or lease of the business, but rather an outright sale of the equipment. However, Plating once again renewed its settlement offers to Schonter and Toda which were rejected.
 
 
 15
 After this last grievance meeting, defendant chose not to submit the grievances to arbitration. Robaszkiewicz stated that the decision was based upon the evidence gathered by the Union during its investigation, the relevant language in the CBA, the settlement offers made to Schonter and to Toda, the potentially small backpay award and the unlikelihood of prevailing at arbitration. He believed that the union would not prevail at arbitration. After making this decision, Robaszkiewicz promptly informed Schonter and Toda of his decision and also informed them of their right to appeal his decision to the Executive Board.
 
 
 16
 On December 2, 1982, Schonter appealed Robaszkiewicz's decision to the union's Executive Board. Toda also appealed. Farbrother sent Schonter and Toda letters informing them of the time and place where the Executive Board would hear their appeals if desired.
 
 
 17
 At the hearing, which Schonter attended, Schonter and Toda were allowed to present evidence supporting their belief that their grievances should be submitted to arbitration. Schonter personally explained to the Executive Board why his grievance should be taken to arbitration. Schonter testified that the Executive Board was not hostile to him at the meeting and also asked him questions about his grievance.
 
 
 18
 After the hearing, the Executive Board deliberated on Schonter's and Toda's appeals. The Executive Board also decided not to submit the grievances to arbitration. Farbrother advised Schonter and Toda of the union's decision, after which Schonter and Toda filed this Sec. 301 action.
 
 
 19
 They claim that Plating had breached the collective bargaining agreement and the union had breached its duty of fair representation by failing to pursue the grievances to arbitration. The parties consented to Magistrate James G. Carr's exercise of jurisdiction over this case.
 
 
 20
 The Union filed a motion for summary judgment, which the magistrate granted in part and denied in part. Appellants do not appeal from entry of this order.
 
 
 21
 The Union later filed a second motion for summary judgment, which the district court granted on June 16, 1988, concluding that appellants had not stated any facts from which a jury could conclude that the Union breached its duty of fair representation. It is from this order that Schonter and Toda appeal.
 
 
 22
 On June 28, 1988, appellants filed a "motion to amend, alter or vacate judgment." Magistrate Carr denied the motion on August 1, 1988.[3]
 
 
 23
 Appellants contend that summary judgment was inappropriate because sufficient facts were stated to show that the Union breached its duty of fair representation. They claim error also based on abuse of discretion in denying their motion to amend, alter or vacate the judgment. They concede that the union's refusal to submit the grievance to arbitration is in and of itself a "decision" on the grievances.
 
 
 24
 Appellants have stated a "hybrid" claim under Sec. 301 of the Labor Management Relations Act of 1947. See 29 U.S.C. Sec. 185. This requires us to determine whether an employer violated a collective bargaining agreement in cases in which "the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." DelCostello v. Teamsters, 462 U.S. 151, 164 (1982). Appellants must show, in addition to the employer's breach of the CBA, that the union's conduct was arbitrary, discriminatory or in bad faith, and that the union's conduct seriously undermined the arbitral process. Barr v. United Parcel Service, 868 F.2d 36, 43 (2d Cir.1989) (quoting Vaca v. Sipes, 386 U.S. 171, 190 (1967); Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 567 (1976)). See also Dill v. Greyhound Corp., 435 F.2d 231 (6th Cir.1970), cert. denied, 402 U.S. 952 (1971); Balowski v. UAW, 372 F.2d 829 (6th Cir.1967).
 
 
 25
 [T]he union must conform its behavior to each of ... three separate standards. First, it must treat all factions and segments of its membership without hostility or discrimination. Next, the broad discretion of the union in asserting the rights of its individual members must be exercised in complete good faith and honesty. Finally, the union must avoid arbitrary conduct.
 
 
 26
 Ruzicka v. General Motors Corp., 523 F.2d 306, 309-10 (6th Cir.1975). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Proc. 56(c). The Supreme Court has also instructed that as to the evidentiary standard applicable when considering a motion for summary judgment; the district court may examine the evidence presented as it would pursuant to a motion for a directed verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
 
 
 27
 The magistrate concluded that appellants failed to submit evidence sufficient to create a material question that the Union acted in bad faith or discriminatorily. Originally, the magistrate was not entirely certain whether the union's conduct was "arbitrary." After further discovery, the magistrate concluded that the Union's pursuit of appellants' grievances could not constitute arbitrary conduct and ruled favorably on the union's motion.
 
 
 28
 It is clear to us, as it was to the district court, that the evidence presented does not create a material question regarding the Union's alleged breach of its duty of fair representation. The Union and its representatives indisputably worked with appellants and pursued their grievances honestly and in good faith. Its representatives met with appellants and management on a number of occasions to resolve the grievances. When the time came at which the Union needed to decide whether to submit the grievances to arbitration, it made a good faith decision not to pursue the grievances in arbitration. It is not our function under these circumstances to "second guess" that decision.
 
 
 29
 The Union is afforded a wide range of reasonableness in processing grievances and in making collective decisions for the unit. See Humphrey v. Moore, 375 U.S. 335, 350 (1964); Ford Motor Co. v. Huffman, 345 U.S. 330, 333 (1953). A union does not act in bad faith when it finds that a grievance is without merit based upon a good faith interpretation of the collective bargaining agreement. See Poole v. Budd Co., 706 F.2d 181 (6th Cir.1983). The Supreme Court has stated "just as a union must be free to sift out wholly frivolous grievances which would clog the grievance process, so must it be free to take a position on not so frivolous disputes ... to remove or gag the union in these cases which surely weaken the collective bargaining and grievance process." Humphrey, 375 U.S. at 349-50. "An action will not lie against the union for failure to process the grievance, absent a showing of fraud, misrepresentation, bad faith, dishonesty of purpose or such gross mistake or inaction as to imply bad faith." Balowski v. UAW, 374 F.2d at 834. "Proof that the union may have acted negligently or exercised poor judgment is not enough to support a claim of unfair representation." Camden v. United Steel Workers Local 2944, 683 F.2d 590 (1st Cir.1982); see also Ruzicka, 649 F.2d at 1207. From the record, it is demonstrated that the Union's processing of the grievances was not "perfunctory." See Poole, 706 F.2d at 183.
 
 
 30
 Appellants also appeal the magistrate's order denying their motion to amend under Fed.R.Civ.P. 59.
 
 
 31
 Here the parties had four years altogether to conduct discovery. The district court was well within its discretion in refusing to vacate or amend its judgment under Rule 59. See generally C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure Sec. 2740-41 (1983 and 1988 Supp.). See also Shavrnoch v. Clark Oil & Refining Corp., 726 F.2d 291 (6th Cir.1984); York v. Tennessee Crushed Stone Ass'n, 684 F.2d 360 (6th Cir.1982).
 
 
 32
 For the foregoing reasons, the decision of the district court is AFFIRMED.
 
 
 
 *
 THE HONORABLE ANNA DIGGS TAYLOR, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 While this appeal was pending, appellants settled with Plating
 
 
 [2]
 Toda was laid off by Plating on or about November 24, 1981. Toda was unavailable for deposition during the pendency of the proceedings before the district court because he was incarcerated
 
 
 [3]
 Schonter and Toda also appeal from this decision