**ALLIED ACCESSORIES AND AUTO PARTS CO., INC., Plaintiff–Appellee,**

v.

**GENERAL MOTORS CORPORATION, Defendant–Appellant.**

No. 88–1760.

United States Court of Appeals, Sixth Circuit.

Argued April 14, 1989.

Decided April 26, 1990.

Jerome D. Frank (argued), Seyburn, Kahn, Ginn, Bess & Howard, Southfield, Mich., for plaintiff-appellee.

Lawrence E. Elder, Martin S. Hyman, Irving Scher (argued), Weil, Gotshal & Manges, New York City, Francis H. Dunne, Judith A. Zakens, General Motors Corp., Office of the General Counsel, Detroit, Mich., for defendant-appellant.

Before JONES, WELLFORD and GUY, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

The defendant-appellant, General Motors Corporation ("GM") appeals from the district court's judgment in this price discrimination action filed pursuant to the Robinson–Patman Price Discrimination Act, 15 U.S.C. § 13(a) (1982). For the reasons which follow, we affirm.

## I.

The plaintiff-appellee, Allied Accessories and Auto Parts Company, Inc. ("Allied"), is a wholesale distributor of automobile parts and accessories to mass merchandiser retailers. During the years 1972 to 1979, one of Allied's largest retail customers was the K Mart Corporation ("K Mart"). However, Allied had only once, for a few months, sold oil filters to K Mart. Prior to 1978, Campbell Filter Company ("Campbell") had supplied K Mart with oil filters manufactured by Campbell and sold under the K Mart name. Campbell also manufactured the Fram oil filters that K Mart sold.

In 1978, K Mart decided to change its marketing of oil filters. It switched to a policy of selling Original Equipment Manufacturer ("OEM") filters, *i.e.*, oil filters manufactured by automobile companies for the cars they build. K Mart had a policy of buying directly from manufacturers whenever possible, since that was usually the way to get the lowest price. For some reason, however, GM could not sell the AC–Delco oil filters manufactured for GM cars directly to K Mart. Instead, GM signed a contract with Campbell allowing Campbell to purchase AC–Delco oil filters for the sole purpose of supplying K Mart. This agreement provided Campbell with a price discount of 10 percent below warehouse distributor prices. This discount was not made available to Allied.

Several companies submitted bids to K Mart for supplying AC–Delco oil filters. The lowest bid was submitted by Campbell, and the second-lowest bid was submitted by Allied. The bid that was submitted by Campbell was 10 percent lower than plaintiff's bid. K Mart subsequently chose Campbell as its supplier for AC–Delco oil filters. Allied brought suit in federal district court, alleging that GM's discount to Campbell violated the Robinson–Patman Price Discrimination Act, 15 U.S.C. § 13(a). The district court agreed with Allied's assertion that GM charged different prices for the same goods. The court also agreed that Allied and Campbell were competitors, "since Campbell was stepping outside of its prior posture as a manufacturer and becoming a supplier, and offering to supply the same product to K Mart as was plaintiff." J. App. at 46. However, the district

court did not find GM liable under the Act. The district court first rejected Allied's contention that it would have been selected as K Mart's supplier "but for" the difference in price between Allied and Campbell. J. App. at 47–52. The district court found that price was not K Mart's *sole* consideration in choosing a supplier, since K Mart's policy was to stay with an established vendor. However, in the event a lower price was offered by a new vendor, K Mart's policy was to go back to the established vendor to see if the new price could be met. *Id.* Because K Mart had previously only dealt with oil filter manufacturers, the district court reasoned that only a manufacturing company like Campbell could be an "established vendor" for the purposes of this policy. Thus, although a great deal of testimony pointed to price as K Mart's primary consideration, the district court held that an established vendor like Campbell would have had an advantage even if its bidding price had not been lower.

In addition to finding that GM's price discrimination was not the sole cause of Allied's failure to win the K Mart contract, the district court also found that Allied had not provided sufficient proof with regard to damages. The district court stated:

> Taking into account defendant's assertions of inaccuracies and inability to reflect true damages, the Court concludes that an accurate finding of damages would be merely speculative. The Court is unable to determine a proper allocation of plaintiff's operating expenses, a proportionately fair reduction occasioned by defendant's lower price discount in 1981, and an accurate determination of lost profits. The Court therefore declines to find that damages are ascertainable.

Thus, the district court concluded that Allied had established neither liability nor damages under the Robinson–Patman Price Discrimination Act.

In an opinion dated July 23, 1987, this court reversed the district court's decision. *Allied Accessories and Auto Parts Co., Inc. v. General Motors Corp.*, 825 F.2d 971 (6th Cir.1987) (*"Allied I"*). Addressing the causation standard to be applied in Robin-

son–Patman Price Discrimination Act cases, this court held that "the district court was incorrect in its assumption that Allied must show that GM's price discrimination was the *sole* cause of its failure to receive the K Mart account." *Id.* at 973 (emphasis in original). Rather, "in order to demonstrate damage under [the Act], 'it is enough that the illegality is shown to be a *material cause* of the injury....'" *Id.* (quoting *Zenith Corp. v. Hazeltine*, 395 U.S. 100, 114 n. 9, 89 S.Ct. 1562, 1571 n. 9, 23 L.Ed.2d 129 (1969)) (emphasis in original). In addition, the *Allied I* court held that the district court had applied too strict a standard for determining damages, and that *both parties* had "clearly presented evidence sufficient for the determination of damages." *Id.* at 974–75. Thus, the *Allied I* court reversed the district court's decision, remanding the case for a proper application of the governing legal standards.

On remand, the district court determined that GM's price discrimination was a "material cause" of Allied's failure to obtain the K Mart account, and proceeded to award $1,351,814.58 in treble damages, as required under the antitrust laws. Regarding the causation question, the district court stated:

> Assuming that Campbell and Allied offered the filters to K Mart at the same price, several factors favor the selection of Allied over Campbell as K Mart's supplier. These factors lead to the conclusion that the ten percent discount that GM provided to Campbell was a material factor in K Mart's rejection of Allied's bid.

> \* \* \* \* \* \*

> Since K Mart was only retailing an OEM line in the east, the location of the supplier's warehouses would affect K Mart's access to the merchandise. Allied maintains warehouses in Michigan, New Jersey, Pennsylvania and Atlanta.... Campbell operates out of its main office in Oklahoma, with shipping locations in Missouri and Utah.... Thus, the location of Allied's warehouses in the east supports the selection of Allied over

Campbell as K Mart's supplier in the east.

Moreover, Allied's ability to deliver smaller shipments in shorter periods of time also improved its desirability as a supplier. Allied's delivery system enabled Allied to deliver any quantity of merchandise within two days receipt of an order for the merchandise.... Campbell would drop-ship merchandise to individual stores only on orders of 150 pounds or more and would need thirty days for delivery.

Finally, there is ample evidence that the price at which K Mart could purchase the filters was K Mart's primary consideration in awarding the supplier contract....

Therefore, considering all factors, it is this Court's reasoned judgment that the ten percent lower price, which Campbell could offer because of the GM discount, *materially affected* K Mart's selection of its supplier of AC–Delco oil filters.

J. App. at 178–79 (emphasis added).

Regarding damages, the district court used Allied's "damage study" as a starting point. That study postulated that absent GM's price discrimination, Allied would have sold AC–Delco oil filters to K Mart *at Allied's bidding price.* However, the district court reduced Allied's damage figure by some $500,000.00 to arrive at a benchmark damage estimate of $450,604.86. J. App. at 182–87. The court then trebled that figure to arrive at a total damage award of $1,351,814.58. *Id.* at 187.

## II.

■ The district court's findings as to causation and damages may be overturned only if they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm impression that a mistake has been made. *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

■ The Robinson–Patman Price Discrimination Act, 15 U.S.C. § 13(a), states in pertinent part that:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are sold for use, consumption, or resale within the United States ... and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them....

The Clayton Act, 15 U.S.C. § 15 (1982), further provides that:

[A]ny person who shall be injured in his business or property *by reason of* anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides ... and shall recover threefold the damages by him sustained....

(emphasis added). As this court made clear in *Allied I,* the above-quoted language does not require the plaintiff to prove that price discrimination was the sole or "but for" cause of his injury. It is enough that the challenged price discrimination is a *material* cause of that injury. " '[A] plaintiff need not exhaust all possible alternative sources of injury in fulfilling his burden of proving compensable injury....' " *Allied I,* 825 F.2d at 973 (quoting *Zenith Corp. v. Hazeltine,* 395 U.S. 100, 114 n. 9, 89 S.Ct. 1562, 1571 n. 9, 23 L.Ed.2d 129 (1969)).

GM, while purporting to adhere to this court's decision in *Allied I,* nevertheless argues that in order to prove compensable injury under the Act, Allied must show that it would have obtained the K Mart account in a "violation free environment." GM further asserts that Allied has not met this standard because the record indicates that

an oil filter *manufacturer* would have obtained the account in the absence of price discrimination. Regarding this latter assertion, GM points to record evidence suggesting that K Mart would not have awarded the account to Allied unless Allied's selling price was "in the ballpark" with the prices charged by oil filter manufacturers (such as Fram). *See* J. App. at 115.

In our view, GM's "violation free environment" standard is merely a reformulation of the "but for" causation standard that was rejected in *Allied I.* The district court properly found that under the material cause standard, Allied need only show that GM's price discrimination "materially affected" K Mart's decision to award the account to Campbell. *See* J. App. at 179. Moreover, while there is record evidence suggesting that Allied would not have obtained the oil filter account in the absence of price discrimination, there is ample record evidence to the contrary. In particular, Kenneth Eisenbraun, a former buyer for K Mart who was involved in the negotiations with GM and Campbell, indicated that "the crucial factor in awarding the contract was Campbell's lower price." J. App. at 37 (original district court decision). While Eisenbraun testified that K Mart's policy was to buy directly from a manufacturer whenever possible, he also testified that this policy was not strictly enforced. *Id.* Finally, as the district court noted in its opinion on remand, the locations of Allied's warehouses made Allied a very attractive candidate for the account. *Id.* at 178–79. Given these considerations, we do not believe that the district court's findings on causation are clearly erroneous. As such, we affirm the district court on this issue.

### III.

GM next contends that the district court's damages calculation is clearly erroneous because the calculation assumes that Allied would ultimately have sold the oil filters to K Mart *at Allied's original asking price.* In support of this argument, GM points to record evidence suggesting that, if GM had not price discriminated

against Allied, K Mart would have attempted to negotiate a lower price before awarding the account to Allied.

GM's argument suffers from the flawed assumption that damages must be proven with mathematical precision under the Robinson–Patman Price Discrimination Act. As this court stated in *Allied I*:

'While the damages may not be determined by merely speculation or guess, it will be enough if the evidence show[s] the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise.'

825 F.2d at 974 (quoting *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931)). In the instant case, the district court approximated Allied's damages "as a matter of just and reasonable inference." Although there is evidence that K Mart would have attempted to negotiate a lower price before awarding the account to Allied, there is no evidence that K Mart would have *insisted* on a price reduction. Moreover, the district court reduced Allied's benchmark damage estimate by some $500,000.00 to approximately $450,000.00. Therefore, because the damage award is a reasonable one, and because the district court took obvious pains to ensure this, we uphold the district court's damages calculation.

### IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.