961 F.2d 1578
 1992-1 Trade Cases P 69,809
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ROBERTSON'S BATTERY TERMINAL, INC., William D. Robertson,
and Sharon Robertson, Plaintiffs-Appellants,
v.
PACIFIC CHLORIDE, INC., Defendant-Appellee.
 No. 91-5918.
 United States Court of Appeals, Sixth Circuit.
 May 4, 1992.
 
 Before RALPH B GUY, JR. and BATCHELDER, Circuit Judges, and SPIEGEL, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs-appellants, Robertson's Battery Terminal, Inc. ("Battery Terminal"), William Robertson ("Robertson"), and Sharon Robertson, appeal the district court's judgment for defendant-appellee, Pacific Chloride, Inc. ("PCI"), following a bench trial in this action based on the Robinson-Patman Price Discrimination Act ("Act"), 15 U.S.C. Section 13(a), and on allegedly outstanding warranty claims and unpaid billing credits. We affirm the judgment of the district court.
 
 I.
 
 2
 PCI is a manufacturer of industrial batteries. Battery Terminal, previously a distributor for GNB, Inc. ("GNB"), a former competitor of PCI, entered into a sales agreement and a consignment agreement with PCI in 1986,[1] by the terms of which Battery Terminal agreed to solicit sales of PCI products, implement PCI's warranty program, and follow PCI's sales and service policies, which required Battery Terminal to service PCI products, including batteries. Typically, Battery Terminal would forward customers' orders to PCI, which would bill the customer directly and pay Battery Terminal a commission. Occasionally, Battery Terminal would purchase products from PCI on credit, at a rate based on a discount multiplier, and resell them to customers.
 
 
 3
 PCI offered two warranties on its batteries: the "heavyweight" and the "diamond."[2] Different multipliers applied to Battery Terminal's purchase of PCI batteries, depending on the type of battery and warranty. The consignment agreement provided that Battery Terminal would keep in stock a supply of batteries and also provided that, if a battery were on consignment for six months, Battery Terminal would have the option of purchasing the battery or returning it to PCI.[3]
 
 
 4
 In August of 1987, PCI announced to its customers that its parent company had purchased a controlling interest in GNB, but that PCI and GNB would continue to operate separately. In October of 1987, a PCI employee, Jim Hellem, helped Robertson prepare a bid proposal for submission to General Electric ("GE"). On November 23, the day the bids were due, as Robertson was en route to GE to submit the bid proposal, he was informed by Hellem via telephone that a GNB representative had obtained Battery Terminal's pricing information from PCI and had stated that GNB intended to submit to GE a bid below Battery Terminal's cost. Robertson terminated the call and did not call Hellem back, despite the fact that he knew Hellem was prepared to quote him a lower price on these products for use in the GE bid. Neither Battery Terminal nor GNB was awarded the GE bid.
 
 
 5
 On February 24, 1988, Robertson was informed that Battery Terminal was required to pay PCI $15,706.10 in order to keep Battery Terminal's account current. On March 15, 1988, PCI sales representatives were notified, in writing, that PCI and GNB would be merged. In May of 1988, because Battery Terminal had had nineteen batteries on consignment for more than six months, and following a request for return or payment in accordance with Battery Terminal's consignment agreement with PCI, PCI billed Battery Terminal $18,450.00 for these batteries. On July 21, 1988, following a determination by the Quality Control Manager for PCI that a Battery Terminal customer had abused four PCI batteries, PCI rejected the recommendation of Battery Terminal that these batteries be replaced pursuant to warranty. By April of 1989, Battery Terminal owed PCI in excess of $118,000.
 
 II.
 
 6
 The factual determinations of a district court sitting without a jury may not be set aside by a reviewing court unless clearly erroneous. Fed.R.Civ.P. 52(a); Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1984); Sawyer v. Arum, 690 F.2d 590, 591-92 (6th Cir.1982) (factual determinations of district court not set aside unless reviewing court left with definite and firm conviction that a mistake was made).
 
 
 7
 Appellants' first claim, that PCI violated the Act[4] by having quoted a lower price to the GNB sales representative than to Battery Terminal for use in the GE bid proposal, lacks merit. This court has held that, "[a]s a basic pre-condition for a violation of the statute, the plaintiff must establish that the defendant made a sale to each of two separate and distinct purchasers." Shavrnoch v. Clark Oil and Refining Corp., 726 F.2d 291, 295 (6th Cir.1984) (emphasis added). See also Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 615 (4th Cir.1985) ("[T]wo comparable, completed sales [constitute] one of the jurisdictional prerequisites for establishing a violation of Section 2(a) of Robinson-Patman.") The district court found that neither GNB nor Battery Terminal was awarded the GE bid and, therefore, there was no sale by PCI to either GNB or Battery Terminal. No evidence of any other unlawfully discriminatory sales to anyone was presented by Battery Terminal or the Robertsons. Because the requirement of two completed sales was not met, there could be no violation of the Act.[5]
 
 
 8
 Appellants' claim based on outstanding warranties also is meritless. The district court found undisputed, as a factual matter, that certain warranty claims submitted by Battery Terminal lacked the warranty registration numbers and customer information required by the sales agreement.[6] Therefore, PCI was under no obligation to honor these claims. The district court also found that other claims were made with respect to batteries that had been abused by the customer. "Use of a product contrary to its directions will preclude recovery for breach of an express warranty." Overstreet v. Norden Laboratories, Inc., 669 F.2d 1286, 1290 (6th Cir.1982) (construing Kentucky law). Therefore, PCI had no obligation to honor these warranties.
 
 
 9
 Finally, the district court properly found that, because appellants failed to produce any documentation to support their allegation that PCI had committed billing errors for which Battery Terminal was not being credited, there could be no recovery on this claim.[7]
 
 III.
 
 10
 The factual determinations of the district court are not clearly erroneous; rather, they are amply supported by the record. Plaintiffs-appellants failed to present sufficient evidence to sustain their burden of proof in this case.
 
 
 11
 The judgment of the district court is affirmed.
 
 
 
 *
 The Honorable S. Arthur Spiegel, United States District Judge, sitting by designation
 
 
 [1]
 The corporate debts of Battery Terminal were secured by personal guarantees signed by William and Sharon Robertson
 
 
 [2]
 The heavyweight warranty provided full coverage for three years and prorated coverage for an additional two years. The diamond warranty provided full coverage for one year and prorated coverage for an additional four years
 
 
 [3]
 In mid-1987, PCI notified its customers that, because of an increase in lead prices, PCI battery prices also would increase. In November of 1987, the discount multiplier applied to Battery Terminal's purchase of PCI batteries was revised, effectively increasing Battery Terminal's cost
 
 
 [4]
 The Act provides, in pertinent part, as follows:
 It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce ... where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them....
 15 U.S.C. § 13(a).
 
 
 [5]
 In addition, appellants failed to meet their burden of proving that the alleged price discrimination had a prohibited effect on competition or that actual damages resulted from this discrimination. Texaco, Inc. v. Hasbrouck, 110 S.Ct. 2535, 2543 (1990); Allied Accessories And Auto Parts Co., Inc. v. General Motors Corp., 901 F.2d 1322, 1324 (6th Cir.1990) (illegal activity must be a material cause of plaintiff's injury). Appellants also failed to prove that PCI engaged in unlawful price discrimination between Battery Terminal and other purchasers of PCI products
 
 
 [6]
 Appellants contend that this information was withheld because PCI had stolen one of Battery Terminal's customers, and it was feared that providing additional customer information would enable PCI to do so with other customers, thereby lessening competition. Appellants have not shown how a single instance of interference, even if true as alleged, has lessened competition in the marketplace. In addition, because in any event Battery Terminal failed to comply with the express warranty requirements, there is no entitlement to recover thereon
 
 
 [7]
 Catherine Kelly, who testified on behalf of PCI, stated that any credits due Battery Terminal either had been applied or granted and that, as to the latter, it was up to Robertson to determine how he wished to use these credits. This testimony does not, as appellants allege, buttress their argument that Battery Terminal is owed for billing errors